IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BLAYNE WILLIAMS, SR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:16-CV-1338-RP |
| | § | |
| CITY OF AUSTIN, ART ACEVEDO, | § | |
| MARGO FRASIER, and | § | |
| FRED FLETCHER, et al., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, filed pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. 7). Having considered the pleadings, the parties' filings, and the applicable law, the Court issues the following order.

## BACKGROUND

Plaintiff Blayne D. Williams was formerly a police officer employed by the Austin Police Department ("APD"). Plaintiff brings this action against the City of Austin, the Austin Police Department, Police Chief Art Acevedo, police monitor Margo Frasier, and police commander Fred Fletcher.[1]

Plaintiff's allegations largely concern disciplinary actions taken against him up to the eventual termination of his employment in the summer of 2015. This first such action occurred in 2011. In that instance, Plaintiff had been involved in a physical altercation with an elderly HEB employee when that employee cut in line in front of Plaintiff at an ATM while Plaintiff was off-duty.[2]

---

[1] According to the complaint, Fletcher is now the chief of police for the Chattanooga Police Department.
[2] Plaintiff's complaint provides little information about his conduct leading up to these disciplinary actions. These facts are taken from Chief Acevedo's affidavit, which Plaintiff attached to his

Following a complaint, APD's Internal Affairs Division began an investigation into the incident, which resulted in Plaintiff's chain of command recommending his indefinite suspension. At or following a subsequent dismissal review hearing, Plaintiff and Chief Acevedo reached a deal in which Plaintiff would receive only a ninety-day suspension and would waive his right to appeal the discipline to the Civil Service Commission. Plaintiff now alleges that, under state law and his collective bargaining agreement, Chief Acevedo had no authority to suspend him for ninety days and that Chief Acevedo's representations to the contrary were fraudulent.

The next instance of discipline occurred in 2013. Plaintiff was then engaged in approved off-duty secondary employment for a Hyatt hotel. In this incident, Plaintiff recovered a cell phone that was hidden in a guest bathroom.[3] The phone was positioned above the guest's bathtub and concealed atop a ceiling tile with a noticeable hole in it. Plaintiff reported to the hotel manager that the situation potentially involved a felony incident of improper video or photography. Rather than report the suspected crime to APD, however, Plaintiff turned the phone over to hotel security staff with instructions to charge the phone and check it for improper images or video. The security staff did so and, finding evidence of criminal conduct, reported the incident to APD the next day. Plaintiff's APD supervisors then instructed him to write a supplemental report on the incident.

Defendant Fletcher initiated an Internal Affairs investigation into Plaintiff's handling of the Hyatt incident. This investigation found that he violated two department policies concerning to incident reporting and evidence collection. The chain of command recommended discipline was a suspension of less than fifteen days. However, Assistant Chief Patrick Ockletree, who conducted Plaintiff's disciplinary meeting, felt that Plaintiff was evasive and dishonest during that meeting.

complaint. *See Wilson v. Birnberg*, 667 F.3d 591, 600 (5th Cir. 2012) (In ruling on 12(b)(6) motion, courts may consider "documents either attached to or incorporated in the complaint.").
[3] Both Plaintiff's complaint and Chief Acevedo's affidavit are somewhat vague on the details of this incident. Additional facts are drawn from Plaintiff's prior lawsuit involving the incident, *Williams v. City of Austin*, 170 F. Supp. 3d 939 (W.D. Tex. 2016), which, as a matter of public record, is properly the subject of judicial notice. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 (5th Cir. 2007).

Because of that, Plaintiff's chain of command sustained two additional violations against him—for neglect of duty and honesty—and changed the recommended discipline to indefinite suspension. A dismissal review hearing followed and resulted in Chief Acevedo's decision to indefinitely suspend Plaintiff's employment.

Plaintiff appealed the indefinite suspension. The hearing examiner sustained three of the four policy violations but overturned the finding of dishonesty. In light of the three sustained violations and Plaintiff's past disciplinary history, the hearing examiner found that indefinite suspension was inappropriate but that Plaintiff's conduct clearly warranted a sanction greater than a fifteen-day suspension. However, because the examiner's authority was limited to reducing the sanction to a suspension of fifteen days or less, he ordered that Plaintiff should be reinstated and given back pay and benefits assuming only a fifteen-day suspension.

Plaintiff asserts that this discipline violated several of his federal constitutional rights and was contrary to state law and his collective bargaining agreement. Additionally, Plaintiff alleges that Acevedo's later decision to terminate APD's secondary employment contract with Hyatt constituted tortious interference with his employment contract.

The final disciplinary action stemmed from Plaintiff's response to a family disturbance call on January 23, 2015. Plaintiff's allegations here are sparse and unclear. He claims that he wrote the necessary report after investigating the disturbance, but it appears he may have violated department policy when he failed to make an arrest. However, Plaintiff maintains that he appropriately relied on the statutory definition of "family violence"—which provides that acts of self-defense do not constitute unlawful family violence—in determining that an arrest was unwarranted. *See* Tex. Fam. Code § 71.004. Nonetheless, according to Plaintiff, Chief Acevedo cited him for incompetence over his handling of the incident.

Finally, Plaintiff alleges that he made several reports of criminal activity by city employees to APD's Special Investigative Unit. He made two reports in May and June of 2014 concerning the purported criminal acts of Chief Acevedo and city attorney Ann Spiegel. Plaintiff allegedly reported additional criminal conduct of Chief Acevedo at the end of April 2015. He asserts that he was terminated within ninety days of this latter report, triggering a presumption under state law that his termination was due to his whistleblowing activity. *See* Tex. Gov't Code § 554.004(a).

Plaintiff filed this action on December 27, 2016. Defendants moved to dismiss Plaintiff's complaint on January 20, 2017. Plaintiff did not respond to Defendants' motion, but instead filed his First Amended Complaint more than a month later, on February 21, 2017, without Defendants' consent and without leave of the court. *See* Fed. R. Civ. P. 15(a)(2) (opponent's consent or leave of court required to amend pleading more than 21 days after service of 12(b)(6) motion). In the interest of judicial economy, however, the Court will review the adequacy of Plaintiff's complaint as amended. Plaintiff's First Amended Complaint lists six causes of action: (1) violation of 42 U.S.C. § 1981; (2) violations of 42 U.S.C. §§ 1985 and 1983 and retaliation; (3) fraud; (4) conspiracy; (5) tortious interference with contract; and (6) wrongful discharge in violation of state-law whistleblower protections. Defendants renewed their motion to dismiss on March 6, 2017. To date, Plaintiff has filed no response.[4]

## LEGAL STANDARD

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) the complaint must be liberally construed in favor of the plaintiff and all facts pleaded therein must be taken as true. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). Although Federal Rule of Civil Procedure 8 mandates only that a pleading contain a "short and plain statement of the claim showing that the

---

[4] The Court additionally notes that Plaintiff has failed to submit several filings mandated by the Court's scheduling order.

pleader is entitled to relief," this standard demands more than unadorned accusations, "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The court must initially identify pleadings that are no more than legal conclusions not entitled to the assumption of truth, then assume the veracity of well-pleaded factual allegations and determine whether those allegations plausibly give rise to an entitlement to relief. If not, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief. *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Throughout this process, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

## DISCUSSION

### 1.     Claim Preclusion

Defendants point out that Plaintiff has previously brought a lawsuit concerning largely the same facts, which was dismissed with prejudice on March 16, 2016. (Dkt. 72, Civ. No. 1:14-cv-695-SS). The Court will therefore examine whether any of Plaintiff's claims are barred by the doctrine of *res judicata*.[5]

---

[5] Though pleaded as an affirmative defense in Defendants' Answer, (Dkt. 14), Defendants did not raise the issue in their motion to dismiss. The Court may consider the issue *sua sponte. See GLF Const. Corp. v. LAN/STV*, 414 F.3d 553, 555 n.2 (5th Cir. 2005); *Am. Furniture Co., Inc. v. Int'l*

"The doctrine of *res judicata*, or claim preclusion, forecloses relitigation of claims that were or could have been raised in a prior action." *Davis v. Dall. Area Rapid Transit*, 383 F.3d 309, 312–13 (5th Cir. 2004). If a claim in the current action meets the following four elements, it is barred by the doctrine of *res judicata*: (1) the parties in the prior suit and current suit are identical; (2) a court of competent jurisdiction rendered the prior judgment; (3) the prior judgment was final and on the merits; and (4) the plaintiff raised the same cause of action in both suits. *Id.*

The first element is met as to Plaintiff's claims against the City. (*See* Compl., 1:14-cv-695-SS, Dkt. 1).[6] The second element is also met: the court in the prior action—this federal district court— had jurisdiction to hear Plaintiff's federal and related state-law claims. *See* 28 U.S.C. § 1367(a). The prior court rendered summary judgment against Plaintiff and thus dismissed his claims with prejudice, satisfying the third element.

Finally, Plaintiff's prior and current claims against the City constitute the same cause of action. Courts examining whether two lawsuits involve the same cause of action apply the "transactional" test. *Davis*, 383 F.3d at 313. "Under the transactional test, a prior judgment's preclusive effect extends to all rights of the plaintiff 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.'" *Id.* (quoting *Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 395–96 (5th Cir. 2004)). Factors relevant to the determination whether a grouping of facts constitutes a transaction or series of transactions include "whether facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Id.*

---

*Accommodations Supply*, 721 F.2d 478, 482 (5th Cir. 1981) ("[W]here all of the relevant facts are contained in the record before us and all are uncontroverted, we may not ignore their legal effect, nor may we decline to consider the application of controlling rules of law to dispositive facts, simply because neither party has seen fit to invite our attention to the issue . . . .").

[6] The joining of additional defendants does not prevent the preclusive effect of the prior judgment as to those who were parties to the previous suit. *Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 849, 856 (S.D. Miss. 2012), *aff'd* 718 F.3d 460 (5th Cir. 2013); *Kennedy v. Pfizer, Inc.*, Civ. No. 13-3132, 2014 WL 4092479, at *2 (W.D. La. Aug. 13, 2014).

(quoting Restatement (Second) of Judgments § 24(2) (1982)). The "critical issue" is whether the two actions share a common nucleus of operative fact. *Id.*

Plaintiff's two actions against the City clearly arise from the same common nucleus of operative fact. Plaintiff's current action centers largely on the very same events that gave rise to his prior suit. More specifically, both suits contain allegations of wrongful and discriminatory discipline leading to a violation of his rights, such as the discipline resulting from his off-duty work at a Hyatt hotel. These facts are obviously related in time, origin, motivation, and form a convenient trial unit—they are the same facts. *See id.* The Court therefore concludes that Plaintiff's claims against the City concerning the acts of its agents occurring prior to the time he filed his previous action are barred by the doctrine of *res judicata*. These claims are therefore dismissed without leave to amend.[7]

### 2.    Claims Against the Austin Police Department

Plaintiff named the APD as a defendant in this action. APD is not a legal entity separate from the City of Austin and is not capable of being sued. *See Darby v. Pasadena Police Dep't.*, 939 F.2d 311, 313–14 (5th Cir. 1991). Plaintiff's claims against APD are therefore dismissed without leave to amend.

### 3.    Whistleblower Claim

Plaintiff asserts a claim of wrongful termination in violation of the Texas Whistleblower Act, Tex. Gov't Code § 554.002.[8] Plaintiff alleges that he reported the criminal conduct of Chief Acevedo and City Attorney Ann Spiegel to the Austin Police Department's Special Investigative Unit and that his employment was terminated within ninety days of his last report in April 2015.

---

[7] In limiting this discussion to the preclusion of claims against the City, the Court expresses no view on the availability of the defense of issue preclusion to the individual defendants. The Court will consider the question if raised in future briefing.

[8] Due to the lack of clarity throughout the complaint, the remaining discussion analyzes his claims as though asserted against all defendants except where otherwise specified.

Plaintiff's whistleblower claim fails for two reasons. First, an aggrieved whistleblower must bring his claim no later than the ninetieth day after the violation occurred or was discovered through reasonable diligence. Taking as true Plaintiff's allegation that his employment was terminated within ninety days of his April 2015 report, the violation would have occurred no later than July 2015. Plaintiff does not allege that he only later discovered the violation; rather, he relies on a statutory presumption that the adverse action was motivated by his report. *See* Tex. Gov't Code § 554.004 (rebuttable presumption of retaliation if adverse action taken within ninety days of report). Accordingly, Plaintiff was required to file his whistleblower claim no later than October 2015. Plaintiff filed this action on December 27, 2016. His claim is therefore time-barred.

Second, even if Plaintiff had filed suit within the time allowed by statute, his claim would still not be properly before this Court. The Texas Whistleblower Act's waiver of sovereign immunity does not extend to suits brought in the federal courts. *See id.* § 554.0035; *Martinez v. Tex. Dep't of Criminal Justice*, 300 F.3d 567, 575–76 (5th Cir. 2002) ("[W]e hold that, under this Act, Texas has not waived its Eleventh Amendment immunity in federal court."). To the extent his claim is not time-barred and assuming Plaintiff has complied with all other prerequisites to suit, *see* Tex. Gov't Code § 554.006, Plaintiff must pursue his whistleblower claim in state court.

For these reasons, Plaintiff's whistleblower claim is dismissed without leave to amend.

4.   **Tort Claims**

Plaintiff brings tort claims for fraud, conspiracy, and tortious interference with contract, though it is unclear against whom he asserts these claims. To the extent he asserts them against the City, his claims are barred under the Texas Tort Claims Act. Tex. Civ. Prac. & Rem. Code § 101.057(2) (waiver of sovereign immunity does not extend to claims involving intentional torts). To the extent Plaintiff asserts his claims against the individual defendants in their official capacities, these claims are deemed asserted against the governmental entity and likewise fall within the

exclusion from the Act's waiver of sovereign immunity. *See Mason v. Lafayette City-Parish Consol. Gov't*, 806 F.3d 268, 279–80 (5th Cir. 2015) (citing *Hafter v. Melo*, 502 U.S. 21, 25 (1991) ("Suits against state officials in their official capacity therefore should be treated as suits against the State.").

Plaintiff names each individual plaintiff in both their official and individual capacities and makes passing references throughout the complaint to the individual defendants acting in their individual capacities. (*See, e.g.*, First Am. Compl. ¶¶ 23, 38). However, "[i]f a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under [the Tort Claims Act] against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only." Tex. Civ. Prac. & Rem. Code § 101.106. Plaintiff includes no allegation from which the Court could conclude that Defendants acted outside the scope of their employment. On the contrary, all relevant allegations concern the individual defendants' actions in bringing about or enforcing disciplinary action against Plaintiff, which is plainly "conduct within the general scope of th[e] [defendants'] employment."

Additionally, "a tort suit against the government, as distinct from a statutory claim, is brought 'under' the [Tort Claims] Act for purposes of section 101.106, even though the Act does not waive immunity." *Franka v. Velasquez*, 332 S.W.3d 367, 379 (Tex. 2011). Thus, Plaintiff's intentional-tort claims may be brought under the Act notwithstanding the government's immunity. *See id.* Section 101.106 therefore deems Plaintiff's claims as against the individual defendants in their official capacities. Accordingly, the claims are barred on grounds of sovereign immunity as explained above. For these reasons, the Court dismisses Plaintiff's tort claims without leave to amend.

## 5. Civil Rights Claims

### A. Limitations Period

Plaintiff's claims under 42 U.S.C. §§ 1981, 1983, and 1985 are governed by a two-year limitations period. *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988); *Hernandez v. Kirkendall*, SA:13-CV-0685-DAE, 2014 WL 3853842, at *2 (W.D. Tex. Aug. 5, 2014). Plaintiff filed this action on December 27, 2016. Thus, all claims accruing prior to December 27, 2014, are time-barred.[9] The Court will consider these allegations only to the extent they offer factual support to Plaintiff's timely claims, if any.

### B. 42 U.S.C. § 1981

Plaintiff brings a claim against Defendants under 42 U.S.C. § 1981. This statute guarantees the equal right of all individuals within the United States to make and enforce contracts. Plaintiff asserts that Defendants acted in concert to deny him the benefit of his employment contract.

To state a claim under § 1981, the plaintiff must offer factual allegations sufficient to support the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant[s]; and (3) the discrimination concerns one or more activities enumerated in the statute." *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994). Plaintiff's complaint contains scant allegations to support these claims, and those that Plaintiff has put forward are too conclusory to support his claims, even in light of the liberal construction afforded *pro se* plaintiffs. *See Dickerson v. O'Neill*, 73 F. App'x 84 (5th Cir. 2003) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000)).

Plaintiff does not allege that he is a member of a racial minority. Based on his few references to African American officers, it can perhaps be inferred that Plaintiff claims membership in this group. Further, Plaintiff offers no facts from which it could be inferred that Defendants had any

---

[9] In any case, these allegations were the subject of Plaintiff's prior lawsuit. *See Williams v. City of Austin*, 1:14-cv-659-SS (W.D. Tex. 2014).

intent to discriminate against him on the basis of his race. His allegations particular to his § 1981 claim are devoid of any mention of race or discrimination; they instead focus on Chief Acevedo's purported failure to follow the procedural provisions of state law and Plaintiff's collective bargaining agreement. Elsewhere in his complaint, Plaintiff alleges that Chief Acevedo has amended charging letters as to non-African American officers but never as to any African American officer. This is the sole clear allegation of disparate treatment in Plaintiff's complaint,[10] and Plaintiff nowhere ties it to his own situation, such as by alleging that there was a charging letter in his case, that he was eligible for an amendment, that the charging letter was not amended, and that he was similarly situated to others whose charging letters had been amended. Even if these facts were sufficiently pleaded, no other present allegations suggest that the disparate treatment would concern one of the activities enumerated in § 1981. *See Green*, 27 F.3d 1083 at 1086.

In sum, Plaintiff's allegations fall far short of supporting a plausible claim for relief under § 1981, even when liberally construed in his favor. The Court therefore dismisses these claims.

**C.      42 U.S.C. § 1985**

The Court next addresses Plaintiff's claim under 42 U.S.C. § 1985. This statute prohibits persons from conspiring to deprive any individual of the equal protection, privileges, and immunities of law. Plaintiff alleges that the individual defendants conspired to violate certain of his rights under state and federal law.

To state a viable § 1985, the plaintiff must allege: "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving . . . a person . . . of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes . . . a deprivation of any right or privilege of a citizen of the United States." *Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994). Plaintiff's

---

[10] Elsewhere, Plaintiff alleges that he "experienced discriminatory treatment which was different from similarly situated employees, namely but not limited to Frank Corpus." (First Am. Compl., Dkt. 5, ¶ 51). He does not elaborate on this conclusory assertion.

allegations exclusively concern the actions of Defendants Frasier, Acevedo, and Fletcher, which were committed in the scope of their duties as employees of APD. Because of this, Plaintiff is unable to establish the first element of a conspiracy claim. The Fifth Circuit has adopted the intracorporate conspiracy doctrine in the context of § 1985 claims, *id.* at 653, which holds that "an agreement between or among agents of the same legal entity, when the agents act in their official capacities, is not an unlawful conspiracy." *Ziglar v. Abassi*, Nos. 15–1358, 15–1359, 15–1363, __ U.S. __, 2017 WL 2621317, at *25 (June 19, 2017). Since the individual defendants were at all relevant times agents of the same legal entity, an agreement among them cannot establish a conspiracy under § 1985 as a matter of law. *See Hilliard*, 30 F.3d at 652–53. The Court therefore dismisses Plaintiff's § 1985 claims without leave to amend.

### D.     42 U.S.C. § 1983

The Court next examines Plaintiff's claims arising under 42 U.S.C. § 1983, which creates a private right of action against any person who, under color of state law, deprives any individual of a federally secured right. Plaintiff alleges deprivations of his rights under the Fifth, Thirteenth, and Fourteenth Amendments.[11]

#### i.     Claims Against the City

To the extent not precluded, *see supra*, Plaintiff's § 1983 claims against the City fail because Plaintiff offers no allegations from which it could be inferred that the City was responsible for any constitutional violation. *See City of Canton v. Harris*, 489 U.S. 378, 386 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue."). To establish municipal liability, the plaintiff must allege facts sufficient to identify: "(1) an official policy (or custom), of which (2) a policymaker can be charged with actual or constructive

---

[11] Plaintiff asserts in passing that Defendants also violated his First Amendment rights, but never expands on that accusation. (*See* Fist Am. Compl., Dkt. 5, ¶ 9). Plaintiff's complaint therefore states no claim under the First Amendment.

knowledge, and (3) a constitutional violation whose 'moving force' is that policy or custom." *Valle v. City of Houston*, 613 F.3d 536, 541–42 (5th Cir. 2010) (quoting *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002)).

Plaintiff's complaint establishes none of these elements. Though he made a fleeting and conclusory reference to a "dishonesty policy," the allegation appears to be that a lawful policy was used "arbitrarily and capriciously" against him—in other words, the "moving force" behind the constitutional violation was not the policy itself, but rather the manner in which it was applied. (*See* First Am. Compl., Dkt. 5, ¶ 29). At most, this alleges an isolated incident of unlawful conduct that cannot sustain municipal liability. *See Fraire v. City of Arlington*, 957 F.2d 1268, 1278 (5th Cir. 1992). The balance of Plaintiff's allegations about the City concerns only its status as the employer of the individual defendants. (*See, e.g.*, First Am. Compl., Dkt. 5, ¶ 34). But because "[*r*]*espondeat superior* or vicarious liability will not attach under § 1983," these allegation fail to state a valid claim for municipal liability. His claims against the City are therefore dismissed.

### ii.     14th Amendment Due Process

Plaintiff alleges that his discipline and the ultimate termination of his employment deprived him of procedural and substantive due process under the Fourteenth Amendment.

Where a public employee has a constitutionally protected property interest in his employment, the employer's failure to provide the employee pre-termination notice and an opportunity to respond violates the employee's right to procedural due process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). Plaintiff's complaint includes no facts suggesting that APD failed to provide him with these procedural safeguards. On the contrary, Plaintiff alleges that Chief Acevedo brought "charges against [him]," demonstrating that Plaintiff received at least some notice prior to termination. (*See, e.g.*, First Am. Compl., Dkt. 5, ¶ 23). Plaintiff makes no mention of the

presence or absence of any opportunity to respond prior to his termination.[12] Rather, he complains only that Defendants' conduct was not in accordance with the state Civil Service Act or his collective bargaining agreement. Even if proven, these allegations do not establish a procedural due process violation. *See Giovanni v. Lynn*, 48 F.3d 908, 912 (5th Cir. 1995) ("Mere failure to accord the procedural protections called for by state law or regulation does not of itself amount to a denial of due process."). With no facts indicating that Plaintiff was denied pre-termination notice and an opportunity to respond, Plaintiff has not adequately alleged a deprivation of his procedural due process rights under the federal Constitution.

Plaintiff also asserts that his termination deprived him of substantive due process. "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary and capricious." *Lewis v. Univ. of Tex. Med. Brach at Galveston*, 655 F.3d 625, 630 (5th Cir. 2011) (quoting *Moulton v. Cty. Of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)).

Plaintiff asserts that the "dishonesty policy was used arbitrarily and capriciously by Chief Acevedo," but he does not provide any other facts that make clear the importance of the allegation. (*See* First Am. Compl., Dkt. 5, ¶ 29). Such a "formulaic recitation of the elements of a cause of action," devoid of "further factual enhancement," is insufficient to support a claim. *Twombly*, 550 U.S. at 555. Even construed liberally in Plaintiff's favor, the complaint includes no allegation—aside from a conclusory yet sharp reference to "Gestapo" tactics—from which it could be inferred that any defendant acted in a manner that "shocks the conscience." *See Marco Outdoor Advert., Inc. v. Regional Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2006) ("The plaintiff must . . . demonstrate that

---

[12] The Court notes, however, that the undisputed facts of his prior employment-related suit against the City indicate that he had been receiving disciplinary review hearings. *See Williams v. City of Austin*, 170 F. Supp. 3d 939, 942–46 (W.D. Tex. 2016).

the abuse of power by the state official 'shocks the conscience.'"). The Court therefore dismisses Plaintiff's § 1983 claims to the extent he alleges a violation of his Fourteenth Amendment substantive and procedural due process rights.

### iii.    14th Amendment Equal Protection

Plaintiff also alleges a violation of his right to equal protection under the Fourteenth Amendment. This claim fails for the same reasons provided above with respect to his § 1981 claim. Plaintiff's bare assertion of disparate treatment provides the Court with no basis from which to infer a violation of Plaintiff's rights under the Equal Protection Clause. Rather, as Defendants point out, Plaintiff's complaint offers allegations that are "merely consistent" with Defendants' liability. *See Iqbal*, 556 U.S. at 678. This is insufficient to state a plausible claim for relief. *Id.* Plaintiff's equal protection claim is therefore dismissed.

### iv.    13th Amendment

Plaintiff alleges that Defendants violated his Thirteenth Amendment right to be free from involuntary servitude. The Thirteenth Amendment sought to abolish compulsory labor akin to the institution of slavery. *United States v. Kozminski*, 487 U.S. 931, 942 (1988). Plaintiff's complaint provides no facts to suggest that he was subjected to such involuntary labor. He asserts only that the discipline he sustained for his failure to report the Hyatt incident violated the Thirteenth Amendment. (First Am. Compl., Dkt. 5, ¶ 23). He does not allege, however, that either this off-duty work or his work for APD was involuntary. Moreover, to the extent Plaintiff was under a legal obligation to report criminal activity even when off-duty, the Court notes that the Thirteenth Amendment "does not prevent the State or Federal Governments from compelling their citizens . . . to perform certain civic duties." *Kozminski*, 487 U.S. at 944. Without more, Plaintiff has not stated a viable claim under the Thirteenth Amendment.

Additionally, as the sole allegation in support of this claim concerns an event in 2013, Plaintiff's Thirteenth Amendment claim is time-barred as discussed above. The Court therefore dismisses this claim without leave to amend.

### v. 5th Amendment

Plaintiff alleges that Defendants violated his rights under the Fifth Amendment. The relevant allegations are unclear and come under the header of Plaintiff's fraud claim, not in the section detailing his § 1983 claims. (*See* First Am. Compl., Dkt. 5, ¶¶ 31–34). Plaintiff suggests, but does not explicitly allege, that one or more among Defendants compelled him to provide information that was incriminating or otherwise damaging. However, he provides no additional details beyond legal argument. (*See id.*). This bare accusation fails to state a viable claim. *Iqbal*, 556 U.S. at 678 ("[Rule 8] demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").

The Court gleans some clues about the basis of Plaintiff's claim from the facts of Plaintiff's prior lawsuit, *Williams*, 170 F. Supp. 3d at 942–46, along with Chief Acevedo's affidavit, (First Am. Compl., Dkt. 5, Ex. E), Plaintiff's citation to *Garrity v. New Jersey*, 385 U.S. 493 (1967), and his reference to a "dishonesty policy." (*See* First Am. Compl., Dkt. 5, ¶ 29). The Court assumes from these sources that Plaintiff bases his Fifth Amendment claim on his discipline related to the Hyatt incident. Following the events at the Hyatt, discipline was initially recommended for his failure to follow procedure in his handling of the cell phone he recovered from the guest's bathroom. However, those investigating Williams felt that he was dishonest and evasive during the investigation, leading to additional discipline for dishonesty and for his failure to take responsibility for his conduct. Because Plaintiff has repeatedly cited *Garrity*, 385 U.S. 493, which concerned penalties imposed on police officers who refused to provide incriminating evidence to investigators,

the Court assumes that the thrust of Plaintiff's claim is that his being disciplined for refusing to accept responsibility—or, in other words, incriminate himself—violates the Fifth Amendment.

Even if Plaintiff had appropriately pleaded these facts, they would not state a claim for relief. First, to the extent the claim accrued in 2013, it is time-barred as discussed above. Second, it is no constitutional violation for the state to compel public employees to provide incriminating testimony "specifically, directly, and narrowly relating to the performance of their official duties on pain of dismissal from public employment," so long as it does not also require a waiver of immunity against the testimony's use in a criminal case. *Uniformed Sanitation Men Ass'n v. Comm'r of Sanitation of City of N.Y.*, 392 U.S. 280, 284 (1968). Plaintiff does not allege that he was required to waive immunity as part of the investigation into the Hyatt incident. Third, even if the APD investigators had unlawfully compelled incriminating statements from Plaintiff, "it is not until their use in a criminal case that a violation of the Self-Incrimination Clause occurs." *See Chavez v. Martinez*, 538 U.S. 760, 767 (2003) (plurality opinion). Plaintiff has not alleged that the state has used any compelled statements against him in any criminal case. He therefore has no ripe claim under the Fifth Amendment. *See id.*

Plaintiff's § 1983 claim premised on a violation of his Fifth Amendment rights is dismissed without leave to amend.

## 6.    Retaliation

The Court finally addresses Plaintiff's potential retaliation claim. Plaintiff uses the term "retaliation" several times in his complaint, but, except where it concerns his whistleblowing activities, *see supra*, it is unclear which legal theory Plaintiff relies on to advance his claim.

"Although claims of retaliation are commonly brought under the First Amendment and may also be brought under Title VII, retaliation claims growing out of complaints of employment discrimination have not been recognized under the Equal Protection Clause of the Fourteenth Amendment." *Matthews v. City of W. Point*, 863 F. Supp. 2d 572, 604 (N.D. Miss. 2012), *Tinoco v.*

*Raleeh*, No. 4:05CV367, 2006 WL 27287, at *2 (E.D. Tex. Jan. 5, 2006) ("No cause of action exists for retaliation under the Equal Protection Clause of the Fourteenth Amendment."). Additionally, "[t]he Thirteenth Amendment does not establish an independent cause of action for employment discrimination." *Washington v. Louisiana*, Civ. Action No. 11-334-BAJ-DAD, 2012 WL 4159079, at *12 (M.D. La.), *report and recommendation adopted*, 2012 WL 4120441 (M.D. La. Sept. 18, 2012), *aff'd*, 628 F. App'x 914 (5th Cir. 2015). Finally, as previously discussed, the state may permissibly punish a public employee for his failure to provide even incriminating information related to the performance of his public duties, so long as it does not also require a waiver of Fifth Amendment immunity. *See supra*. A retaliation claim thus does not lie under the Fifth Amendment in the circumstances of this case. As Plaintiff has alleged no facts to support a claim under the First Amendment[13] and does not raise a claim under Title VII, the sole remaining basis for a retaliation claim is 42 U.S.C. § 1981.

To state a claim for retaliation under § 1981, the plaintiff must show: "(1) that the plaintiff engaged in activities protected by § 1981; (2) that an adverse employment action followed; and (3) that there was a causal connection between the two." *Foley v. Univ. of Hous. Sys.*, 355 F.3d 333, 339 (5th Cir. 2003). Plaintiff's allegations of retaliation—at least those unrelated to his purported whistleblowing activity—focus on the actions of Defendant Frasier. The only potentially protected activity Plaintiff identifies in his complaint is that he previously sued Frasier for discrimination. (*See* First Am. Compl., Dkt. 5, ¶ 19). Aside from a bare assertion of retaliation, Plaintiff's complaint contains no facts connecting that lawsuit to any adverse employment action. Additionally, Plaintiff brought that suit against Frasier ten years before the first adverse employment action detailed in

---

[13] To the extent Plaintiff's allegations concerning his state whistleblower claim could be read as supporting a First Amendment retaliation claim, they are still insufficient. A First Amendment retaliation claim in the public employment context requires the plaintiff to demonstrate a causal connection between the claimed protected activity and the adverse employment action. *Gibson v. Kilpatrick*, 838 F.3d 476, 481 (5th Cir. 2016). Plaintiff's whistleblower claim relied on a statutory presumption to establish causation, which does not apply in the First Amendment context. Without any other facts, Plaintiff has not provided sufficient allegations to support a First Amendment retaliation claim.

Plaintiff's complaint. *See Williams v. Frasier*, 1:01-cv-470-JN (W.D. Tex. 2001); (First Am. Compl., Dkt. 5, ¶ 14). This delay undermines any plausible inference of a causal connection. *See Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 274 (2001) (per curiam) ("Action taken . . . 20 months later suggests, by itself, no causality at all.").

Because Plaintiff's complaint offers no allegations demonstrating that any activity protected by § 1981 is causally connected to an adverse employment action within the limitations period, he has failed to state a viable claim for relief. Plaintiff's retaliation claim is therefore dismissed.

## CONCLUSION

Even under the generous reading afforded to *pro se* complaints, the Court concludes that Plaintiff's First Amended Complaint states no valid claim for relief. Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is hereby **GRANTED**. (Dkt. 7). Plaintiff's First Amended Complaint is **DISMISSED**. This dismissal is with prejudice with respect to those claims for which leave to amend was denied.[14] As to the remaining claims, Plaintiff may file an amended complaint not later than fourteen (14) days after the issuance of this order.

**SIGNED** on July 10, 2017.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE

---

[14] For clarity, this includes Plaintiff's previously litigated claims against the City, his claims against APD, his state law whistleblower and tort claims, any claims brought under the civil rights statutes accruing before December 27, 2014, his claims under 42 U.S.C. § 1985, and his 42 U.S.C. § 1983 claims to the extent they allege violations of his Fifth or Thirteenth Amendment rights.